COLE, Judge.
The issues in this personal injury suit are whether or not defendant Roy I¿eal was in the course and scope of his employment at the time of the accident and whether or not the damages awarded were adequate.
The litigation arose from the following facts. On January 17,1976, a head-on collision occurred on Louisiana Highway 3040 in the Houma tunnel. A 1974 Cadillac driven by Roy Neal crossed the center line and collided with a car driven by Lillie Cox. Plaintiffs, Mayóla Herndon, age 50, and her daughter, Marla Herndon, age 10, were guest passengers in the Cox vehicle. As a result of the accident Mrs. Herndon received many serious injuries including fractures of both legs and multiple fractures of the face. Marla sustained fractures to the left hip, her right leg and her right foot. Both plaintiffs required extensive hospitalization and therapy.
Mrs. Herndon and Marla filed suit against Roy Neal and his employer, Cajun Welding and Pump Service, Inc. Commercial Union Assurance Companies (the insur *1182 er of the Cox automobile) intervened for sums expended under its medical payment and uninsured motorist coverage. After a trial on the merits, Cajun Welding was dismissed from the suit and judgment was rendered in favor of plaintiffs and against Roy Neal.[1] Judgment was also rendered in favor of Commercial Union. Plaintiffs have appealed.
Plaintiffs argue the court erred in finding Roy Neal was not engaged in the course and scope of his employment at the time of the accident. We disagree. The record shows clearly Mr. Neal was engaged in a personal mission when the collision occurred. He testified he and his brother were equal shareholders in their incorporated welding business. He reported to the welding shop at approximately 9:00 A.M. Saturday, January 17. He remained there until shortly before noon at which time he closed the shop and left in his personal car. On his way home he stopped at a local lounge to visit a girlfriend and remained there until mid or late afternoon. Immediately after leaving the lounge he was involved in the accident.
Plaintiffs argue even though the shop was closed on the afternoon of the accident, Cajun Welding is liable under the doctrine of respondeat superior because Mr. Neal was “on call” 24 hours a day and was therefore engaged in the course and scope of his employment at the time of the accident. We find absolutely no merit in this argument.
The testimony at trial showed at the time of the accident Cajun Welding was a new business. In order to take advantage of any available work, Roy and his brother, Alvin, readily accepted any call, regardless of the time of day or the day of the week. Alvin testified he received most of the calls and if the job required the presence of two people, he would call Roy to assist him.
We conclude this informal type of “on-call” situation does not mean the employee is within the course and scope of the employment every second of every day. This is particularly true when the individual allegedly “on-call” is socializing[2] in a lounge for several hours immediately prior to the accident. It would be ludicrous to say at the time of this accident Mr. Neal was in any way pursuing his duties as an employee of Cajun Welding. Therefore, we affirm the dismissal of Cajun Welding from the suit.
Plaintiffs argue further the damages awarded them were insufficient. We consider first Marla’s claims. Marla sustained fractures to her left hip, her right lower leg and her right foot. Immediately after the accident, surgery was performed involving an open reduction of the hip fracture, and she was placed in a two-leg body cast that extended from her ribs to her toes. Metal pins were placed in her hip which were removed in a subsequent operation. She remained in the hospital for one month and was unable to walk for approximately six months after the accident. She had to use crutches or a walker in order to walk for the next six months. Dr. Pete Rhymes, an orthopedic surgeon who treated Marla, testified he believes she is likely to develop arthritis in her hip and at least once during her life an artificial hip will have to be inserted. He recommended she do as little walking, standing or climbing as possible so as to avoid any stress to her hip. He predicted she would never be able to run and participate in the activities enjoyed by most girls her age.
We conclude the trial court abused its discretion in awarding only the sum of $45,000 for Marla. She obviously suffered severe pain of an extended duration from the initial injury and surgery. At the time of the trial, five years after the accident, she stated her hip hurts by the end of each day. She testified she feels grossly disfigured by the scar on her hip (measuring 8 inches by 3 inches) and therefore does not *1183 dress as her friends do, in shorts or bathing suits. Although a healthy and active child before the accident, Marla must now be a mere spectator as she observes her friends running, dancing, skating and participating in sports. These aspects of her injury are grave in themselves, but the most egregious aspect is that she must anticipate at least one, and probably several, serious operations whereby the natural bone of her hip will be replaced by plastic and steel. Dr. Rhymes testified once the artificial hip is inserted, it would have to be replaced every ten to fifteen years. (For this reason he wanted to delay the initial surgery for as long as possible.) Therefore, depending upon the date of the first operation, Marla could face as many as seven such operations during her lifetime.
As an appellate court, we can raise the award only to the lowest amount which the trial court could have reasonably granted. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), rehearing denied 1977. Because of the young age of the plaintiff, her gross disfigurement, her permanent disabilities and the probability of future pain, suffering, and medical expenses, we feel the lowest amount the trial court could have reasonably granted is $100,000. We therefore amend the award to this amount.
We now consider the adequacy of the $125,000 award granted Mrs. Herndon for her general damages. The evidence showed she too suffered serious and permanent injuries. In addition to both legs being fractured Mrs. Herndon suffered multiple fractures to her facial bones which were so severe she could not breathe on her own. A tracheotomy was performed and a breathing tube remained in place for several weeks, during which time she was fed intravenously. For several months after the accident her jaws were wired shut so the only way she could eat was to use a syringe and inject liquid foods into her mouth through her clenched teeth. She remained in the Terrebonne General Hospital for more than three months and then was transferred to Ochsner Clinic in New Orleans, where she underwent plastic surgery for her face. Testimony at trial indicated her facial features were so altered she looked like a different person after the accident.
When Mrs. Herndon was released from the hospital she was in two long leg casts which she wore until August 1976. She could not walk unassisted until almost a year and a half after the accident. At the time of trial she stated she still endured pain in her lower legs by the end of each day. Her left leg is bowed as a result of the fracture. She testified her ankles were swollen nightly and she found it hard to move around.
Dr. Rhymes testified the accident had caused an osteoporosis condition of the left foot which would become aggravated as the years go by. He recommended she do only the absolute minimum amount of walking and standing and advised her not to climb stairs. He stated Mrs. Herndon suffers a 20% impairment of the lower extremities which equates to a 25% permanent disability-
After reviewing the record, we conclude there was no abuse of discretion by the trial court in awarding Mrs. Herndon $125,000 for her general damages. Therefore we affirm the amount of the judgment as to her.
For these reasons, the judgment is amended in part and as amended, affirmed. That portion rendered in favor of Richard Herndon and Mayóla Herndon, as administrators for the use and benefit of their minor daughter, Marla Faye Herndon, and against the defendant, Roy J. Neal, is amended to increase the sum of $45,000 to the sum of $100,000. All other aspects of the judgment, including the preferential amounts awarded to intervenor, Commercial Union, are affirmed. Costs are to be paid by appellee Roy Neal.
AMENDED IN PART AND AS AMENDED, AFFIRMED.

. Defendant Roy Neal stipulated as to his liability so the issue was not contested at trial.

. Mr. Neal testified his reasons for going to the lounge were purely personal: he made no business calls while there nor did he receive any.