459 So.2d 230 (1984)
Melvin WATSON, Plaintiff-Appellant,
v.
Waddy BEN, et al., Defendants-Appellees.
No. 83-1029.
Court of Appeal of Louisiana, Third Circuit.
November 20, 1984.
Alex D. Chapman of Fusilier and Chapman, Ville Platte, for plaintiff-appellant.
Gist, Methvin, Hughes & Munsterman, H.B. Gist, III, Alexandria, Stephen Ledet, Jr., Opelousas, Edwards, Stefanski & Barousse, James M. Cunningham, III, Crowley, Guglielmo & Lopez, James Lopez, Opelousas, for defendants-appellees.
Before DOMENGEAUX, GUIDRY, STOKER, YELVERTON and KNOLL, JJ.
*231 GUIDRY, Judge.
This is a suit for damages arising out of a collision between a pickup truck owned and operated by defendant, Michael A. Beard, and a parked truck owned by Waddy Ben, an employee of J.W. McDonald. Plaintiff, also an employee of J.W. McDonald, was standing between the parked Ben vehicle and another parked vehicle owned by J.W. McDonald. Plaintiff sustained injuries when he became entrapped between the two parked vehicles at the time of the collision.
Plaintiff initially brought suit against the State of Louisiana, through the Department of Transportation and Development (DOTD) and Waddy Ben. Plaintiff later amended his petition to include Solid Controls, Inc.,[1] Beard's employer, Michael A. Beard and his insurer, Southern Farm Bureau Casualty Insurance Company, as defendants. Solid filed a third party demand seeking indemnity and/or contribution from Michael Beard and his insurer, Southern Farm. Beard and Southern Farm thereafter filed a third party demand against the State of Louisiana through DOTD and J.W. McDonald seeking the same relief. Liberty Mutual Insurance Company (J.W. McDonald's workmen's compensation insurer) intervened claiming its subrogation rights for the workmen's compensation benefits and medical expenses paid to or on behalf of plaintiff.[2] The trial court granted the State's exception of no cause or right of action and dismissed plaintiff's suit against the State of Louisiana through DOTD, with prejudice, by judgment dated October 1, 1982. Upon plaintiff's motion, suit was also dismissed with prejudice as to Waddy Ben by judgment dated May 18, 1981. Both of these judgments are now final.
After trial on the merits, judgment was rendered in favor of plaintiff and against Michael Beard and Southern Farm, jointly and solidarily, in the amount of $58,480.00. Defendant Beard's defense of impecuniosity was sustained by the trial court resulting in the judgment being reduced to the amount of insurance coverage provided by Southern Farm, i.e., $10,000.00. Plaintiff's claim against Solid was dismissed.[3] Plaintiff appeals. No other party appealed or answered plaintiff's appeal.

FACTS
The record reflects the following pertinent facts to be without dispute. The accident occurred on Friday, October 24, 1980 at approximately 2:30 p.m. on Highway 1109 in Acadia Parish. Plaintiff was employed by J.W. McDonald Construction Company and was involved in the work of resurfacing a portion of Highway 1109 at the time of the accident. Defendant, Michael Beard, was employed as a service technician by Solid Controls, Inc. Solid operates out of Opelousas, Louisiana, and rents oilfield equipment to oil rigs. Beard was on 24 hour call that day, but had punched out at around 2:13 p.m. and was on his way home to Crowley, Louisiana, from Solid's shop in Opelousas.
*232 As Beard approached that portion of Highway 1109 which was under construction, he encountered a McDonald watering truck in the center of the highway dropping water on the road surface to compact the dirt. The driver of the watering truck signaled for Beard to pass him. As Beard went around the water truck, he lost control of his vehicle and slid into the Ben truck which was parked on the side of the road. Plaintiff was standing between this parked vehicle and another at the time of the collision and was entrapped between the two parked vehicles. As a result of the accident, plaintiff sustained injury.
At the time of the accident, Beard was "on call" for 24 hours. His work schedule was six days on call and two days off call. Although Beard had "punched out" that afternoon at around 2:13 p.m., he remained "on call" for the rest of that day. Beard was subject to being called back to work at any time for the remainder of that day and was thus returning to his home to await any possible call from his employer.
Although the truck which Beard was driving was his own truck, Solid paid Beard a $300.00 a month "truck allowance". This sum was based upon what a leasing company would charge for the same vehicle. Beard was also provided with various credit cards for the purchase of gas, for his personal use as well as for his business use. Beard was also authorized to use the credit cards if an emergency arose while he was on the road. Beard had a choice of whether to receive a company vehicle from Solid or to use his own truck and receive the travel allowance. He chose the latter. Beard was also furnished with oil and filters for his truck, and general maintenance on the truck was performed at Solid's shop in Opelousas. Solid required routine inspections of the employee-owned vehicles to insurer their proper operation and fitness. Service reports were prepared on these vehicles and necessary repairs were mandated by Solid.
In brief written reasons for judgment, the trial court concluded as follows:
"(1) That Michael Beard was negligent proximately causing plaintiff's injuries; he and his insurer must be cast.
(2) That Michael Beard was not in the course and scope of his employment at the time. There is not sufficient tie-in to the employment to make applicable the exception to the general rule that an employee returning home from work is not in the course and scope of his employment. The Johnson case is significantly different. There (a) the car was employee-owned, (b) it was especially equipped to receive emergency calls and (c) the employee had to drive that car to secure calls while in it. None of these factors existed here. The last difference, that is, that the employee be able to receive calls while in the car is particularly distinguishing. The other authorities cited by counsel for both sides are indicative of the general trend in jurisprudence but are not so precisely similar as to warrant discussion. The claim against Solid Controls, Inc. will be dismissed.
(3) That damages are fixed as follows:

 a. Lost wages to date of trial $ 18,480.00
 b. Future lost wages and physical
 disabilities other than diminished
 earning capacity 15,000.00
 c. Pain and suffering 35,000.00
 ___________
 Total $ 58,480.00

(4) That Michael Beard is lacking significant assests; the defense of impecuniosity must be sustained. The claim against him is limited to the insurance coverage amount of $10,000."
No party to the instant appeal urges error in the learned trial judge's conclusions regarding the negligence of Michael Beard or the reduction of the judgment because of his impecuniosity. Appellant does however urge that the trial court erred in finding that Beard was not in the course and scope of his employment with Solid at the time of the accident. Additionally, appellant urges that the trial court's award of $35,000.00 for the pain and suffering endured by him is grossly inadequate. These are the only issues presented on appeal.
*233 WAS BEARD IN THE COURSE AND SCOPE OF HIS EMPLOYMENT WITH SOLID AT THE TIME OF ACCIDENT?
The doctrine of respondeat superior is set forth in La.C.C. Arts. 2317 and 2320. Article 2320 provides in pertinent part:
"Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed."
The jurisprudence has construed this article to mean that the employer is liable for the tortious acts of his employees "committed while acting within the scope and course of his employer's business." Jones v. City of Lake Charles, 295 So.2d 914 (La.App. 3rd Cir.1974) and the cases cited therein. In the case of LeBrane v. Lewis, 292 So.2d 216 (La.1974), our Supreme Court stated that where the tortious conduct is "so closely connected in time, place, and causation to his employment-duties as to be regarded a risk of harm fairly attributable to the employer's business," liability for that conduct will be imposed upon the employer.
There is no precise rule by which one can determine in every instance whether the employee is acting within the course and scope of his employment, although it is generally held that an employee, in going to and from his place of employment is not considered as acting within the course and scope of his employment. This general rule is not however without exception.
The criteria for determining when an employee, who while driving a motor vehicle, is acting within the course and scope of his employment was set forth in the recent case of Johnson v. Dufrene, 433 So.2d 1109 (La.App. 4th Cir.1983), writ denied, 441 So.2d 765 (La.1983), wherein the court stated:
"Whether an employee is within the course and scope of his employment during any given incident presents a question that is not answerable except by general rules, given the myriad contexts in which it might arise. The specific inquiry is whether the employee's tortious conduct "was so closely connected in time, place and causation to his employment duties as to be regarded a risk of harm fairly attributable to the employer's business, as compared with conduct motivated by purely personal considerations entirely extraneous to the employer's interest". Daniels v. Conn., 382 So.2d 945 (La.1980); LeBrane v. Lewis, 292 So.2d 216 (La.1974). In those instances where the injury is caused by an employee's negligence while driving a vehicle owned by his employer, our jurisprudence has repeatedly stated that every case must be decided on its own facts. The important considerations which bear on the result are whether the vehicle was being used in such a manner as to benefit the employer, Taylor v. Lumpkin, 391 So.2d 74 (La.App. 4th Cir. 1980); whether the employee was subject to the employer's control at the time of the accident, Keen v. Pel State Oil Co., Inc., 332 So.2d 286 (La.App. 2d Cir.1976); whether the employee's use of the vehicle was authorized by the employer, Harding v. Christiana, 103 So.2d 301 (La.App. Orleans 1958); Futch v. W. Horace Williams Co., 26 So.2d 776 (La. App. 1st Cir.1946); reh. den., 27 So.2d 184; and whether the employee's motive arose from personal objectives or, instead, from his employer's concerns, Keen, supra, Johns v. Hunt Lumber Company, Inc., 250 So.2d 543 (La.App. 2d Cir.1971)."
Solid derived substantial benefit from Beard's vehicle. Beard used the vehicle to get to work and then to proceed to any site designated by his employer. The truck hauled the necessary repair equipment and tools furnished by Solid. Beard sometimes went straight to a job site from his home if he were called out and had the necessary tools in his truck at that time. Under such circumstances, the dispatcher would punch him in before he left his house and would punch him back out upon his return to his home. Since the essence of Solid's business was to service their rental equipment *234 at any time such service was needed, Solid relied on Beard's truck to be available and dependable in transporting him to and from service calls.
The single most important factor to consider in deciding whether there is vicarious liability is the right of the employer to control the work of the employee. Roberts v. State of Louisiana, Through the Louisiana Health and Human Resources Administration, 404 So.2d 1221 (La.1981); Hickman v. Southern Pacific Transportation Company, 262 La. 102, 262 So.2d 385 (La.1972). In Roberts, the Supreme Court emphasized that "the right of control of the time and physical activities in the other party and the existence of a close relationship between the parties" determines that one is a servant. The evidence in the instant case convinces us that Beard was subject to Solid's control at the time of the accident. Beard was on 24 hour call and was subject to being called back to work as soon as he returned home that Friday afternoon, notwithstanding the fact that he had already worked about six hours that day. When an employee is subject to 24 hour call, his movements and actions are subject to the control of his employer. In furtherance of this proposition is the fact that Beard was going straight home from work in order to be available for any possible calls from his employer. Beard was taking the most direct route to his home at the time he was involved in the accident. His sole motives were work-related. He did not take any detours or make any stops on his way home that afternoon since he remained on call that day, despite the fact that he had "punched out" at 2:13 p.m. The facts that Solid required Beard to purchase a certain minimum amount of insurance on his truck, to have his truck periodically inspected, to have service reports on the truck's condition and to make certain repairs performed if deemed necessary by Solid, strengthens our conclusion that Solid "controlled" Beard's activities while he was on call.
The facts of the present case are similar to those considered by this court in Robinson v. Empire Gas, Incorporated of Lake Charles, 334 So.2d 813 (La.App. 3rd Cir. 1976). In Robinson, the employee-repairman was on 24 hour a day call. He kept the company vehicle at his home for the specific purpose of responding to service calls. While returning home from a service call, he was involved in an accident. The employee had taken a detour on the way home in order to purchase cigarettes, when the accident occurred. This court found the employee to be within the course and scope of his employment at the time of the accident, notwithstanding the detour to purchase cigarettes. The court stated that "a short detour for the purpose of buying cigarettes under these circumstances was reasonably incidental to the performance of the duties for which he was hired, and for which he was allowed to keep the company truck at home." We emphasized that the employee's returning home was the same as returning to the employer's premises following performance of a work-related function.
The only distinction between the Robinson case and the present case is that in Robinson, the employee was using a company-owned truck. This distinction is irrelevant under the particular circumstances of this case. Solid had the power to control Beard's truck while Beard was on call to the same extent that the company did its truck in Robinson. The fact that Beard was free to use his truck as he desired on his "off" days does not address the issue of Beard's relationship with Solid at the time of the accident. Beard was on his way home to possibly receive other calls and had not deviated from his destination in the slightest, as did the employee in Robinson.
Defendant, Solid, analogizes the present situation to that in Herndon v. Neal, 424 So.2d 1180 (La.App. 1st Cir.1982), where the court found the "on call" employee not to be within the course and scope of his employment. In Herndon, the plaintiff had left his place of employment at around noon and went to a lounge to visit his girlfriend. He remained at the lounge for several hours. Upon leaving the lounge he *235 was involved in an accident. In contrast with the present case, the employee in Herndon was on a purely personal mission which in no way was of benefit to his employer. The Herndon case is also distinguishable from the present case in that the employee in Herndon was only on an "informal type of call". That employee and his brother were equal shareholders in a newly formed welding business. They had the discretion of answering any calls for their services at any time of day, but were not bound to do so as was defendant Beard. Beard was obligated to answer and report to any calls from his employer while "on call", whereas the employee in Herndon was actually a part owner in the business and thus not bound by his employer. The Herndon case is thus not applicable to our present situation.
Plaintiff cites the case of Rollins v. New York Fire and Marine Underwriters, Inc., 225 So.2d 663 (La.App. 3rd Cir.1969), writ refused, 227 So.2d 595 (La.1969), as being dispositive of the issue of Solid's vicarious liability. In Rollins, this court restated the general rule that an employee, in going to and from his place of employment, is not considered as acting within the scope of his employment to such an extent as to render his employer liable to third persons for the employee's negligent acts. Wills v. Correge, 148 So.2d 822 (La.App. 4th Cir.1963), writ refused, 150 So.2d 768 (La.1963). An exception to this general rule occurs where a factual showing can be made that the use of the motor vehicle by the employee, whether personally owned or owned by the employer, was being used in the service of the employer or while about the employer's business. O'Brien v. Traders and General Insurance Company, 136 So.2d 852 (La.App. 1st Cir.1961).
This court analyzed various factors in order to determine if the employee in Rollins fit into the above mentioned exception, stating that no one factor is necessarily controlling. These factors include whether the employee was entitled to travel expenses for his return trip from the meeting he was required to attend; whether the employee was a salaried worker; whether the employee could be ordered to report to work at any particular job by the employer; whether the employer had control over the employee's means of transportation; and, whether the employee's use of his own vehicle was of value to the employer in the conduct of its business. The employee in Rollins was found not to be within the course and scope of his employment since his situation did not fit into the factors listed above.
Defendant Beard's employment situation does meet the tests set forth in Rollins so as to fit the exception to the Correge rule. Beard was entitled to travel expenses. The evidence shows that Solid furnished Beard with credit cards for his gas and also furnished him with oil and filters. In addition to this, Beard was paid a set salary for 55 hours of work per week, whether or not Beard actually worked that many hours. At the time of the accident, Beard had only worked 22.34 hours, yet was to be compensated for 55 hours that week. In effect, he was being paid for his travel time also.
Another factor which supports our finding that Beard was being paid for his travel time is the way in which Beard "punched in" when called out for a job from his home. Beard testified that when he was called off to a job at night the company dispatcher would punch him in before Beard left his home, and would punch him back out upon his return to his home. Thus, Beard's reported hours of work included his travel time to and from either the shop or the job site.
Beard also fits into the Rollins factor of being a salaried worker. As was before mentioned, Beard was paid a certain wage based on a 55 hour work week. This salary was increased by any additional time worked above this.
When Beard was "on call", he was subject to Solid's orders for the entire six day period that he worked; 24 hours each day. He was bound to report to either the shop or to go straight to the job site.
*236 Solid had a tremendous amount of control over the means of transportation which Beard was to use. Beard was given the option to use his own truck or to be furnished with a company vehicle. Beard's choice of his own vehicle was not without limits and minimum requirements by Solid. Beard was required to purchase a certain amount of insurance on his truck, to submit to routine inspection and maintenance of his truck by Solid, and to have service reports filled out on his vehicle in order to insure Solid of the truck's fitness and proper maintenance.
The final Rollins factor to consider is whether Beard's use of his own automobile was of value to Solid in the conduct of its business. The facts of this case clearly indicate that it was of value to Solid. Since Solid's business is based largely on the servicing of its rental equipment, it is imperative that the employees have dependable vehicles to promptly transport them both to and from the job sites. It is similarly important to Solid that the vehicles are operative in transporting their employees back to their homes, since this is where the employees are to receive their next call for work. Safe and reliable transportation of Beard back to his home on that Friday was of value to Solid in that Beard was heading straight home in order to await further instructions from his employer. An unreliable vehicle could result in an unsatisfied customer due to delays in the repair of Solid's equipment.
Considering the above, we conclude that this case does fall within the exception set forth in Rollins, and that Beard was within the course and scope of his employment at the time of the accident and the trial court clearly erred in concluding otherwise. Accordingly, we conclude that under the general principles of the Master-Servant doctrine, Solid is vicariously liable for Beard's negligent conduct.
In light of our conclusion aforestated, we need not consider appellant's additional contention that the trial court erred in failing to apply the legal presumption that an employee is presumed to be in the course and scope of his employment when driving his employer's vehicle and involved in an accident.

QUANTUM
The trial judge awarded Melvin Watson $35,000.00 in damages for pain and suffering. Appellant urges that this award is inadequate.
The record shows that Mr. Watson suffered fractures of the shaft of both femurs (thighbones). Surgery was performed and rods were placed in Watson's hips. He remained hospitalized for about six weeks and then returned home where he was confined to bed for a month. Watson was confined to a wheelchair for the next couple of months and then was required to use crutches for another two weeks. The rods were removed a year after the surgery. The record reveals that Watson's recovery was uneventful and the fractures healed properly.
Plaintiff continues to complain of pain in his hips and legs. Dr. T.E. Banks, plaintiff's treating physician, is of the opinion that plaintiff suffers from minimal discomfort which is not of a disabling nature. Dr. Banks suggested that plaintiff return to his former employment a year following the accident. Dr. R. Luke Bordelon testified that plaintiff suffered from 18% permanent physical impairment, but this would not preclude him from engaging in heavy manual labor, as long as the job did not involve a lot of lifting and squatting.
Civil Code Article 1934(3) provides that "much discretion must be left to the (trial) judge or jury..." in the assessment of general damages. In Reck v. Stevens, 373 So.2d 498 (1979), the Supreme Court discussed the guidelines for an appellate court's review of a trial court's damage award. The court stated that:
"Before a trial court award may be questioned as inadequate or excessive, the reviewing court must look first, not to prior awards, but to the individual circumstances of the present case. Only after analysis of the facts and circumstances peculiar to this case and this *237 individual may a reviewing court determine that the award is excessive."
The Supreme Court went on to state that, "the initial inquiry must always be directed at whether the trial court's award for the particular injuries and their effects upon this particular injured person is, a clear abuse of the trier of fact's `much discretion', La.Civ.C. art. 1934(3) in the award of damages." After a review of the record and considering the trial court's much discretion in awarding damages, we do not find a clear abuse of the trial court's discretion in awarding $35,000.00 for plaintiff's pain and suffering.
For the above and foregoing reasons, the judgment of the trial court is affirmed in part, reversed in part, and recast to read as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff, Melvin Watson, and against defendants, Michael A. Beard, Southern Farm Bureau Casualty Insurance Company and Solid Controls, Inc., in solido, in the sum of FIFTY-EIGHT THOUSAND FOUR HUNDRED EIGHTY AND NO/100 ($58,480.00) DOLLARS, together with legal interest from date of judicial demand until paid.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Michael Beard's defense of impecuniosity is sustained and the judgment herein rendered in favor of plaintiff against Michael Beard and Southern Farm Bureau Casualty Insurance Company is limited to the amount of coverage provided by the policy of insurance issued by Southern Farm Bureau Casualty Insurance Company to Michael A. Beard.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the third party demand asserted by Michael A. Beard and Southern Farm Bureau Casualty Insurance Company against the State of Louisiana, Through the Department of Transportation and Development and J.W. McDonald is dismissed with prejudice.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of third party plaintiff, Solid Controls, Inc., and against defendants, Michael A. Beard and his insurer, Southern Farm Bureau Casualty Insurance Company, for indemnity, limited to the amount of insurance coverage provided for by the policy of insurance issued by Southern Farm Bureau Casualty Insurance Company to Michael A. Beard.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of intervenor, Liberty Mutual Insurance Company, recognizing the right of intervenor to be paid by preference and priority out of the judgment rendered heretofore the total sum of all medical expenses paid to or on behalf of Melvin Watson.
All court costs are hereby assessed against Solid Controls, Inc., Michael A. Beard and Southern Farm Bureau Casualty Insurance Company.
Solid Controls, Inc., Michael A. Beard and Southern Farm Bureau Casualty Insurance Company are cast with all costs of this appeal.
AFFIRMED IN PART; REVERSED IN PART; and RENDERED.
STOKER, J., dissents and assigns written reasons.
STOKER, Judge, dissenting.
With respect I disagree with the majority holding; I would affirm the holding of the trial court.
The right to control an employee's activities is certainly a pertinent consideration in respondeat superior cases. However, where this factor (right to control) is found to exist, unless over-all consideration is tempered with a consideration of the specific facts of each case, reliance on the right to control as the primary factor will dictate rather far-reaching consequences.
In this case, Michael A. Beard was simply returning to his home after completing his work for his employer. He was in no way engaged in, or about, or in the furtherance of, his employer's business. The fact *238 that Beard was on call 24 hours per day does not alter the situation. To be on call on such a basis means that an employee is on call where ever he happens to be at any time, that is, whether he is about his employer's business or his personal business. Nevertheless, being on call is not the same thing as being about the employer's business. Clearly a person on call may conduct himself so as to be on call but nevertheless be about his personal concerns, even away from his home and telephone, so long as someone knows how to contact him; or he might be temporarily absent from contract so long as contact is broken for a short time only.
Viewed in the above light, I am of the firm belief that an employee at home but on call can not involve his employer in vicarious liability because of tortious conduct in which the employee might engage to the damage of a third party. In my opinion the same rule should apply in this case in the situation in which Beard's accident occurred while he was en route to his home. In the case before us Michael A. Beard had been released by his employer for the day, at an early hour in fact, because there was no more work for him at that time. I view Beard's status when he was released to return home as no more than that of an ordinary employee who is in the process of returning to his home from work. I can see no distinction between the status of an on call employee who is released to return to his home and an employee who leaves his employer's premises at the end of the day to return home. Likewise, I can see no distinction between the status of an on call employee released to return to his home and the status of an on call employee who has already reached home. In neither case is the employee about his employer's business.
NOTES
[1] Throughout the pleadings, etc., this defendant is alternately referred to as Solid Controls, Inc. and Solids Control, Inc. We do not know which is the correct name of this corporation, but for purposes of this opinion we will refer to this defendant as Solid Controls, Inc.
[2] Prior to trial on the merits, it was stipulated and agreed to by all parties that in the event plaintiff was successful in the litigation and obtained judgment against any defendant, Liberty Mutual Insurance Company would be entitled to recover the amount it had paid to or on behalf of Watson for his medical expenses. Liberty Mutual waived its intervention insofar as the workmen's compensation benefits paid to Watson are concerned. (Tr. pg. 325).
[3] The judgment of the trial court was silent with regard to the third party demands of Beard and Southern Farm against DOTD and J.W. McDonald, and the third party demand of Solid against Beard and his insurer, Southern Farm. Such silence constitutes a rejection of those demands. LSA-C.C.P. Art. 1915; Guaranty Bank & Trust Company of Alexandria, Louisiana v. Carter, 394 So.2d 701 (La.App. 3rd Cir.1981), writ denied, 399 So.2d 599 (La.1981); Leny v. Friedman, 372 So.2d 721 (La.App. 4th Cir.1979), writ denied, 375 So.2d 943 (La.1979); Hebert v. Valenti, 235 So.2d 193 (La.App. 4th Cir.1970).