STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

WADE CONNER

VERSUS

KLARC LEMELLE, ET AL.

**********

APPEAL FROM THE
THIRTY-FIRST JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON DAVIS, NO. 93-18
HONORABLE STEVE GUNNELL, DISTRICT JUDGE

**********

JONATHAN W. PERRY
JUDGE

**********

Court composed of Elizabeth A. Pickett, John E. Conery, and Jonathan W. Perry, Judges.

AFFIRMED.

**Donald Carl Hodge, Jr.**
**Attorney at Law**
**4148 Palm Street**
**Baton Rouge, LA 70808**
**(337) 794-8873**
**Counsel for Plaintiff/Appellant:**
  **Wade Conner**

**Allen J. Mitchell, II**
**Mitchell & Blanco, LLC**
**One Lakeshore Drive, Suite 1495**
**Lake Charles, LA 70629**
**(337) 436-8686**
**Counsel for Defendants/Appellants:**
  **Klarc Lemelle and State**
  **Farm Mutual Automobile Ins. Co.**

**George J. Nalley, Jr.**
**Andrew J. Miner**
**Nalley and Dew, PLC**
**Suite 100**
**2450 Severn Avenue**
**Metairie, LA 70001**
**(504) 838-8188**
**Counsel for Appellee:**
  **RPM Pizza, LLC**

**PERRY, Judge.**

In this case, we are asked to review de novo the trial court's dismissal of plaintiff's vicarious liability lawsuit against an employer on a motion for summary judgment. The injured plaintiff as well as the employee and the auto liability insurer appeal. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

On March 4, 2017, Wade Conner (hereafter "Conner") and Klarc Lemelle (hereafter "Lemelle") were involved in a motorcycle/pickup truck accident on U.S. Highway 90 (hereafter "Hwy. 90"). Lemelle, driving a pickup truck owned by his mother Elizabeth Bordelon, was turning left onto Shellie Drive in Jefferson Davis Parish when he struck Conner, the sole rider on a motorcycle. At the time of the accident, Lemelle, a pizza delivery driver for RPM Pizza, LLC (hereafter "RPM"), which marketed Domino's Pizzas, had clocked out of work, driven approximately ten miles, and was just blocks away from his home on Shellie Drive when the two vehicles collided.

Conner sued Lemelle, Lemelle's mother, their insurer, State Farm Mutual Automobile Insurance Company (hereafter "State Farm"), and RPM, who it was asserted was vicariously liable for Lemelle's actions. RPM moved for summary judgment, contending Lemelle was not in the course and scope of his employment at the time of the accident. Conner, Lemelle, and State Farm opposed the motion, arguing the facts, when viewed in light of well-established jurisprudence, established the course and scope issue such that summary judgment would have been inappropriate.

The trial court granted RPM's motion for summary judgment and dismissed Conner's damage claim against it. Conner, Lemelle, and State Farm appealed, contending that the trial court erred when it found Lemelle was not in the course and

scope of his employment with RPM at the time of the motorcycle/automobile accident.

## DISCUSSION

*Summary Judgment*

Appellate courts review summary judgments de novo using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate, i.e., whether there is any genuine issue of material fact and whether the movant is entitled to judgment as a matter of law. *Samaha v. Rau*, 07-1726 (La. 2/26/08), 977 So.2d 880. On a motion for summary judgment, the mover bears the burden of proof; however, if the mover will not bear the burden of proof at trial on the issue before the court on the motion for summary judgment, the mover's burden on the motion does not require that all essential elements of the adverse party's claim, action, or defense, be negated. Instead, the mover must point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, the adverse party must produce factual evidence sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La.Code Civ.P. art. 966(D)(1).

To reverse the trial court's decision, this court would have to find on de novo review that the record reveals a genuine issue of material fact which precludes summary judgment as a matter of law. *White v. Louisiana Dep't of Transp. & Dev.*, 18-741 (La.App. 3 Cir. 3/13/19), 269 So.3d 1031, *writ denied*, 19-0572 (La. 5/28/19), 273 So.3d 311. A fact, for summary judgment purposes, "is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute." *Hines v. Garrett*, 04-806, p. 1 (La. 6/25/04), 876 So.2d 764, 765 (per curiam). An issue, for summary judgment purposes, is genuine

2

if "reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate." *Id*. at 765-66.

Despite the legislative mandate that summary judgment procedure is now favored, factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, and all doubt must be resolved in the opponent's favor. *Willis v. Medders*, 00-2507 (La. 12/8/00), 775 So.2d 1049. *See also Independent Fire Ins. Co. v. Sunbeam Corp.*, 99–2181, 99–2257, p. 17 (La. 2/29/00), 755 So.2d 226, 236 (noting the court "must draw those inferences from the undisputed facts which are most favorable to the party opposing the motion").

A genuine issue is a triable issue. *Brown v. Amar Oil Co.*, 11-1631 (La.App. 1 Cir. 11/8/12), 110 So.3d 1089. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of substantive law applicable to the case. *Hall v. Our Lady of the Lake R.M.C.*, 06-1425 (La.App. 1 Cir. 6/20/07), 968 So.2d 179. Thus, to determine whether the trial court's grant of summary judgment was proper, this court must look to the applicable substantive law.

*Vicarious Liability*

Conner, Lemelle, and State Farm (collectively "Appellants") argue that the trial court erred when it determined Lemelle was not in the course and scope of his employment with RPM at the time of the accident. They argue that there is no precise rule determinative of the course and scope issue and contend that each case must be determined on its own facts. This, they say, should be a jury function.

In opposition, RPM asserts that Appellants failed to present the trial court with a list of disputed facts as required by La.Dist.Ct.R. 9.10(b)(1) and have not challenged any of the facts relied upon in the trial court's analysis of RPM's motion

3

for summary judgment.[1] To the contrary, RPM contends that Appellants either argue that the trial court misapplied established Louisiana law to those facts or that as an appellate court we should expand Louisiana jurisprudence on the issue of the course and scope of employment. Both these arguments, RPM asserts, present questions of law and are without merit.

Under Louisiana law, an employer is answerable for the damage occasioned by its servants *in the exercise of the functions in which the servant is employed*. La.Civ.Code art. 2320.[2] "Liability is imposed upon the employer without regard to [its] own negligence or fault; it is a consequence of the employment relationship." *Sampay v. Morton Salt Co.*, 395 So.2d 326, 328 (La.1981). Specifically, an employer is liable for its employee's torts committed if, at the time, the employee was acting within the course and scope of his employment. *Baumeister v. Plunkett*, 95–2270 (La. 5/21/96), 673 So.2d 994. Moreover, "responsibility only attaches, when the masters or employers . . . might have prevented the act which caused the damage, and have not done it." La.Civ.Code art. 2320.

An employee is acting within the course and scope of his employment when the employee's action is "of the kind that he is employed to perform, occurs

---

[1] In passing and without elaboration, RPM also points out that Lemelle, his mother, and State Farm filed answers to Conner's petition in which they denied that, based on information and belief, Lemelle was in the course and scope of his employment with RPM at the time of the accident. The term "on information and belief" is a common legal term often utilized in pleadings. *See, e.g.*, La.Code Civ.P. art. 1004 (stating that '[i]f the defendant is without knowledge or information sufficient to justify a belief as to the truth of an allegation of fact made in the petition, he shall so state[.]"). Qualifying words such as "upon information and belief" and "appear" are the appropriate manner to plead when a plaintiff is drawing reasonable inferences from facts. *See Lewis v. Taylor*, No. 1:10-CV-00108, 2010 WL 3785109, at 2-3 (S.D. Ohio Sept. 21, 2010). Because these parties denied Lemelle was an RPM employee utilizing qualifying words, it cannot be considered as a judicial confession under La.Civ.Code art. 1853 (stating that a "judicial confession is a declaration made by a party in a judicial proceeding. That confession constitutes full proof against the party who made it.").

[2] Louisiana Revised Statutes 9:3921, a statute limiting the employer's right to seek contribution from its employee, one that "presupposes a finding that the employee was acting in the course and scope of his employment[,]"*Austin v. Pascarelli*, 531 So.2d 550, (La.App. 4 Cir. 1988), also states that "every master or employer is answerable for the damage occasioned by his servant or employee in the exercise of the functions in which they are employed."

4

substantially within the authorized limits of time and space, and is activated at least in part by a purpose to serve the employer." *Orgeron v. McDonald*, 93–1353 (La. 7/5/94), 639 So.2d 224, 226–27; *see also Timmons v. Silman*, 99-3264 (La. 5/16/00), 761 So.2d 507.

The course of employment refers to time and place. *Benoit v. Capitol Mfg. Co.*, 617 So.2d 477 (La.1993). The scope of employment test examines the employment-related risk of injury. *Id*. For the employer to be vicariously liable, the tortious conduct of the employee must be "so closely connected in time, place, and causation to his employment duties as to be regarded a risk of harm fairly attributable to the employer's business, as compared with conduct instituted by purely personal considerations entirely extraneous to the employer's interest." *Barto v. Franchise Enterprises Inc.*, 588 So.2d 1353 (La.App. 2 Cir. 1991), *writ denied*, 591 So.2d 708 (1992), (quoting *LeBrane v. Lewis*, 292 So.2d 216 (La.1974).

In *Hargrave v. Delaughter*, 08-1168, p. 6 (La.App. 3 Cir. 3/4/09), 10 So.3d 245, 249–50, this court stated:

> The Louisiana Supreme Court, in *Blanchard v. Ogima*, 253 La. 34, 215 So.2d 902 (1968), notes that the master-servant doctrine requires that a court inquire into the totality of the master-servant relationship rather than focusing on either "course" or "scope," but notes that article 2320 focuses attention primarily on the "scope" element.
>
> The preeminent master-servant case is *Reed v. House of Decor*, 468 So.2d 1159 (La.1985), wherein, the court articulated the overarching principle governing master-servant liability:
>
>> Determination of the course and scope of employment is largely based on policy. The risks which are generated by an employee's activities while serving his employer's interests are properly allocated to the employer as a cost of engaging in the enterprise. However, when the party (the alleged employer) upon whom vicarious liability is sought to be imposed had only a marginal relationship with the act which generated the risk and did not benefit by it, the purpose of the policy falls, and the responsibility for preventing the risk is solely upon the tortfeasor who created the risk while performing the act.

5

*Id.* at 1162. Each case, then, requires a factual analysis individual in nature, and prior cases serve merely as illustrations of analogous situations and not as hard-and-fast rules.

However, appellate courts follow some generally accepted jurisprudential principles. One such rule courts have consistently held is that going to and from work is not an employment function for which the employer should be held liable. *Vaughan v. Hair*, 94–86 (La.App. 3 Cir. 10/5/94), 645 So.2d 1177, *writ denied*, 95–0123 (La. 3/10/95), 650 So.2d 1186; *Alford v. State Farm Auto. Ins. Co.*, 31,763 (La.App. 2 Cir. 5/5/99), 734 So.2d 1253, *writs denied*, 99–1435, 99–1595 (La. 9/3/99), 747 So.2d 544, 548.

In the present case, Appellants argue that RPM exercised control over the transportation that delivery drivers utilized. In that regard, they point out that RPM required each delivery driver to have his own vehicle; that each vehicle was subject to inspection and RPM mandated that the employee carry a minimum amount of liability insurance; and that each employee was required to place a Domino's car top-sign on the vehicle which identified them and further served as mobile advertisement for RPM.

In furtherance of their argument, Appellants contend that the vehicle Lemelle drove, one over which they contend RPM exercised control, was a tool of the trade. They rely on *Willis v. Cloud*, 151 So.2d 379 (La.App. 3 Cir. 1963), a workers' compensation case, and *Watson v. Ben*, 459 So.2d 230 (La.App. 3 Cir. 1984), a tort case.

From the outset, we observe that although the tort concept of "course and scope of employment," which imposes vicarious liability under La.Civ.Code art. 2320, is closely related to the statutory workers' compensation standard of "arising out of and in the course of employment," those two concepts should not be confused. *See* Malone & Johnson, Workers' Compensation (13 La.Civ.Law Treatise), § 144

(5th ed.); *Mitchell v. AT & T*, 27,290 (La. App. 2 Cir. 8/28/95), 660 So.2d 204, 209, *writ denied*, 95-2474 (La. 12/15/95), 664 So.2d 456. *See, e.g., Stacy v. Minit Oil Change, Inc.*, 874 So.2d 384 (La. Ct. App. 2d Cir. 2004) (citing 13 La.Civ.Law Treatise, Workers' Compensation Law and Practice § 144 (4th Ed.)). *Stacy* was a case in which there was a workplace scuffle for which the injured employee received workers' compensation benefits. In a subsequent tort suit Stacy brought against his employer, the appellate court declined to permit the finding of entitlement to workers' compensation benefits to dictate a conclusion that the dispute was primarily "employment-rooted" for purposes of the employer's vicarious liability for intentional conduct. The court then observed that the compensation standard is "different from, and broader than, the vicarious liability test." *Stacy*, 874 So.2d at 389. Moreover, this court in *Senac v. State Farm Mut. Auto. Ins. Co.*, 09–320, p. 4 (La.App. 3 Cir. 10/7/09), 22 So.3d 1124, 1127, stated: "Contrary to workmen's compensation cases, courts strictly construe [the phrase, course and scope of employment,] in cases involving damage claims for personal injuries."[3] *See also, White v. Canonge*, 01–1227 (La.App. 5 Cir. 3/26/02), 811 So.2d 1286; *Winzer v.*

---

[3] In *Blanchard*, 215 So.2d at 904 (emphasis added), the supreme court, tracing the origin of La.Civ.Code art. 2320 and embracing its strict interpretation, stated:

> These provisions of our Code have their source in the Code Napoleon (1804), Articles 1382-1384. Article 1384 of that Code provides in part:
>
> > '* * * masters and trustees (are responsible), for the injury caused by their servants and managers in the functions in which they have employed them * * *.' (Barrister of the Inner Temple tr.)
>
> Planiol says of this article of the Code Napoleon:
>
> > 'There is nevertheless something exceptional in Art. 1384, and that is the presumption of fault it establishes against the persons it enumerates. As a consequence, **this text should receive a strict interpretation,** as should all those which control legal presumptions.' 2 Pt. 1 Planiol, Treatise on the Civil Law (La. State Law Inst. tr. 1959), sec. 909A, p. 508.

*Richards*, 50,330 (La.App. 2 Cir. 1/13/16), 185 So.3d 876; and *Woolard v. Atkinson*, 43,322 (La.App. 2 Cir. 7/16/08), 988 So.2d 836.

Against that backdrop, we turn to Appellants' reliance on *Willis*, 151 So2d 379, a workers' compensation case, as support for their contention that Lemelle was in the course and scope of his employment with RPM because the vehicle he used was a "tool of the trade." Initially, we note that we have exhaustively researched the jurisprudence and have failed to find any case that has applied a "tool of the trade" exception in the analysis of vicarious liability under La.Civ.Code art. 2320.[4] We further find that *Willis* was applied at a time prior to the enactment of La.R.S. 23:1020.1, a period during which the judiciary consistently ruled that the state's workers' compensation laws were liberally interpreted in favor of the injured worker. *See, Prim v. City of Shreveport*, 297 So.2d 421 (La.1974). To the contrary, as reflected in *Blanchard*, 215 So.2d 902, and *Senac*, 22 So.3d 1124, and other like cases, we find that the phrase "course and scope of employment" is strictly construed under the provisions of La.Civ.Code art. 2320. Accordingly, we find Appellants' reliance on *Willis* in this vicarious liability setting is misplaced.

We also find *Watson,* 459 So.2d 230, factually distinguishable. In *Jack v. McFarland*, 15-405, p. 7 (La.App. 3 Cir. 10/7/15), 175 So.3d 1169, 1174 (citations omitted), this court summarized the pertinent facts in *Watson* as follows:

> In *Watson*, the defendant, a salaried employee, had clocked out of work and was on his way home from his place of employment. However, the defendant remained on call for a six day period, 24 hours each day. During that time, the defendant was required to report to the workplace or job site when he got a call for work. Furthermore, the defendant's employer furnished him with credit cards for gas for his personal vehicle, oil and filters, required a minimum level of insurance, and required his vehicle undergo routine inspections and maintenance. The court found that these circumstances placed the defendant within the course and scope of employment at the time of the accident.

---

[4] We further note that, as counsel for RPM has pointed out, no case after 1963 has applied the exception recognized in *Willis* to even another workers' compensation case.

Though there are similarities between the present case and *Watson*—both reported to the workplace for work; both were required to have minimum levels of vehicle liability insurance; and their vehicles were subject to inspection—there are crucial facts that make the current case distinguishable. The employee in *Watson* was salaried, he remained on call for a six-day period, twenty-four hours each day, and he was provided credit cards for gas, oil and filters. Lemelle, on the other hand, was paid an hourly wage only for the work he performed at the workplace or when he delivered individual pizzas; he may have been on call but his comings and goings were not restricted and he could decline to come into work; and he was only reimbursed for the mileage he tolled for each pizza delivery.

Courts have stated that in vicarious liability cases the specific inquiry should be whether the act "was so closely connected [in] time, place and causation to his employment [] duties as to be regarded a risk of harm fairly attributable to the employer's business, as compared with conduct motivated by purely personal considerations entirely extraneous to the employer's interest." *LeBrane v. Lewis*, 292 So.2d 216, 218 (La.1974). In *Winzer*, 185 So.3d at 881 (citations omitted), the second circuit succinctly stated:

> An employer controls the movements of employees when they are performing duties for the employer and only when this right to control exists may vicarious liability be imposed. When employees are performing functions of their employment, it is as though the employer acts through the employee. The employer receives the benefit of those acts and so he must shoulder the liability for any wrongs committed during the performance of the acts.

Factors useful in determining whether the employee's act was employment-related include the payment of wages by the employer; the employer's power of control; the employee's duty to perform the act in question; the time, place and purpose of the act in relation to the employment; the relationship between the employee's act and the employer's business; the benefits received by the employer from the act; the

9

employee's motivation for performing the act; and the employer's reasonable expectation that the employee would perform the act. *Orgeron*, 639 So.2d 224.

After examining *LeBrane* and the *Orgeron* factors, we find the present case most similar to this court's decision in *Jack*, 175 So.3d 1169. In that case, Ralph McFarland (hereafter "McFarland") was traveling home at approximately four o'clock after leaving a client's workplace when he rear-ended a vehicle operated by Darius Jack (hereafter "Jack"). Jack filed suit for personal injuries against McFarland and Coca–Cola, alleging McFarland was in the course and scope of employment with Coca–Cola at the time.

Jack asserted that at the time of the accident, McFarland was a salesman for Coca–Cola and was in a Coca–Cola polo shirt. He further contended McFarland is a salaried employee of Coca–Cola, was visiting customers on the day of the accident, was compensated for his mileage, and was required to maintain a minimum amount of insurance on his personal vehicle used for work. Jack maintained that McFarland did not have a set work schedule, had a cell phone and laptop paid for by Coca–Cola that he kept to answer work-related calls and e-mails, and that Coca–Cola contacted McFarland on that cell phone following the accident. He claimed that, under the circumstances, Coca–Cola had control over McFarland, thereby implicating the principle of vicarious liability.

In response to plaintiff's suit, Coca–Cola filed a motion for summary judgment on the issue of vicarious liability stating that, although McFarland was a salaried employee and received compensation for his mileage, McFarland had finished work for the day and was returning home. McFarland did not conduct any business on behalf of Coca–Cola following his last meeting with a client. Furthermore, Coca–Cola asserted that McFarland did not have a set work schedule and typically went home for the day after calling on customers; he was not an on-

10

call employee. In support of their motion, Coca–Cola attached the affidavit of McFarland corroborating their assertions that McFarland owned and maintained his vehicle and insurance as well as the assertion that McFarland was traveling home and was finished exercising any employment duties for Coca–Cola.

In finding McFarland was not in the course and scope of his employment at the time of his accident, this court found the following: (1) at the time of the accident he was on his way home for the evening and did not record that mileage for repayment; (2) he was conducting no activity on behalf of his employer after his last customer call; (3) his employer did not have control over him such as it would over a twenty-four hour on-call employee; (4) although the possibility existed that he might have been called back to the office before it closed, that seldom occurred; and, (5) even though McFarland owned his own vehicle and his employer required a minimum level of insurance coverage, he paid for the vehicle's maintenance and auto insurance, purchased the insurance policy himself, and determined which insurance company to use.

In the present case, we find the following facts decisive: (1) Lemelle was an hourly employee and he was no longer being paid for his time and mileage after he clocked out and was making his ten-mile trip back home; (2) although there may have been a time or two when he was called back to work after having clocked-out, he did not expect to return to work after he clocked out on the day of the accident and there were times when he declined to return to work; (3) his vehicle was owned by his mother, who maintained the vehicle, selected the insurance carrier for the vehicle, and paid the insurance premiums; and (4) after he had clocked out from work and he was on his way home, his actions neither furthered his employer's business nor contributed to it. Moreover, even if Lemelle may have been wearing his work uniform, just as the Coca–Cola polo shirt McFarland wore in *Jack*, and the

11

Domino's car-top sign was atop his vehicle in contravention to RPM's policy that such sign was not to be taken home, there was no evidence such items were any indicia that they furthered RPM's business at the time of the accident. Consequently, we find the trial court did not err in granting RPM's motion for summary judgment.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.[5] Summary Judgment was correctly granted to RPM Pizza, LLC, and all claims against them were properly dismissed. Costs of this appeal are assessed to Wade Conner, Klarc Lemelle, and State Farm Mutual Automobile Insurance Company.

**AFFIRMED.**

---

[5] Although Conner also alleged in his pleadings that RPM negligently hired Lemelle, negligently supervised him, and negligently maintained polices to ensure driver safety, these issues were not asserted at the trial court level and have not been raised here. Moreover, these issues are no longer relevant after our resolution, adverse to Appellants, of whether Lemelle was in the course and scope of his employment at the time of the incident. Clearly, RPM could not have had a duty to train its employees regarding acts that are outside the course and scope of their employment. *See Powell v. Gramercy Ins. Co.*, 13-928 (La.App. 5 Cir. 4/23/14), 140 So.3d 324.