714 So.2d 826 (1998)
Ted V. LANDRY and Therese Landry, Individually and d/b/a Ted Landry Transports, Plaintiffs-Appellees,
v.
Erick L. FINCKE and Southern Siding Company, Inc., Defendants-Appellants.
No. 98-90.
Court of Appeal of Louisiana, Third Circuit.
May 20, 1998.
*827 Roger Chadwick Edwards, Jr., Abbeville, for Ted Landry et ux.
Gordon Blane Clark, Jr., Baton Rouge, for Southern Siding Co., Inc.
Before THIBODEAUX, SAUNDERS and DECUIR, JJ.
THIBODEAUX, Judge.
Ted and Therese Landry, individually and d/b/a Ted Landry Transports, filed suit against Southern Siding Co. Inc. (hereinafter "Southern Siding") seeking damages for injuries sustained in an automobile accident involving the defendant's employee, Eric Fincke. The plaintiffs alleged that Southern Siding should be held vicariously liable for the conduct of its employee, Mr. Fincke, who was acting in the course and scope of his employment at the time of the accident.
At trial, both parties filed motions for summary judgment on the issue of the defendant's liability. Upon finding that Mr. Fincke was acting within the course and scope of his employment at the time of the accident, the trial court held the defendant vicariously liable for the damage sustained by the plaintiffs. The trial court granted the plaintiffs' motion for partial summary judgment and denied the defendant's motion for summary judgment. It properly certified the judgment as a final judgment pursuant to La. Code Civ.P. art. 1915(A)(3). From this judgment, the defendant appeals.
Based on the following reasons, we affirm the judgment of the trial court granting partial summary judgment in favor of the plaintiffs and denying the defendant's motion for summary judgment.

I.

ISSUES
We shall consider whether the trial court erred in holding Southern Siding vicariously liable for the conduct of its employee, Eric Fincke, who was involved in an automobile accident which injured the plaintiffs, Ted and Therese Landry.

*828 II.

FACTS
On June 3, 1997, around 4:00 p.m., Eric Fincke departed from one of Southern Siding's job sites, where he had been called upon to deliver materials and conduct an inspection thereon. Upon leaving the site, Mr. Fincke traveled west on La. Highway 699. As he approached the intersection of Beau Road and Highway 699, Mr. Fincke became inadvertently distracted by looking at homes situated along the right side of Highway 699. When his attention returned to the roadway, Mr. Fincke noticed he failed to yield at a stop sign. Mr. Fincke applied his brakes, but his vehicle skidded through the intersection striking the side of the Landrys' truck.
On June 20, 1997, Ted and Therese Landry, individually and d/b/a Ted Landry Transports, filed a suit for damages against Eric Fincke and his insurer, Financial Indemnity Co., as well as his employer, Southern Siding. Thereafter, Mr. Fincke was declared bankrupt, and his insurer, Financial Indemnity Co., tendered the full policy limits.
The plaintiffs pursued their action against Southern Siding alleging that Southern Siding was vicariously liable for all damage caused by its employee, Eric Fincke, while acting in the course and scope of his employment. The fault of Fincke in causing the accident was undisputed. The sole remaining issue was whether or not Mr. Fincke was acting within the course and scope of his employment when the accident occurred so as to subject his employer, Southern Siding, to vicarious liability.

III.

LAW & DISCUSSION

Standard of Review
As a general principle, "[a]ppellate courts review summary judgments de novo, under the same criteria which governs the district court's consideration of the appropriateness of summary judgment." Potter v. First Federal Savings & Loan Ass'n. of Scotlandville, 615 So.2d 318 (La.1993), citing Schroeder v. Board of Sup'rs of Louisiana State University, 591 So.2d 342 (La.1991).
La.Code Civ.P. art. 966[1], which governs the law applicable to summary judgment, in pertinent part, provides:
C.(1) After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted against an adverse party who fails to make a showing sufficient to establish the existence of proof of an element essential to his claim, action, or defense and on which he will bear the burden of proof at trial.
(2) The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
E. A summary judgment may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages dispositive of a particular issue, theory of recovery, cause of action, or defense, in favor of one or more parties, even though the granting of the summary judgment does not dispose of the entire case.
Thus, "[a] motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." *829 Hayes v. Autin, 96-287, p. 5 (La.App. 3 Cir. 12/26/96); 685 So.2d 691, 694, writ denied, 97-0281 (La.3/14/97); 690 So.2d 41.
The burden of production remains with the mover to show that no material issues of fact exist. Id. The mover must present supportive evidence that the motion for summary judgment is warranted. Id. Once the mover has made a prima facie showing that the motion for summary judgment should be granted, the burden of production shifts to the nonmoving party to present evidence demonstrating the existence of issues of material fact which preclude summary judgment. Id.
In this suit, both parties contend there are no genuine issues of material fact present. Neither party disputes the factual circumstances of this suit. Therefore, in the absence of any factual disputes, we find that the suit was properly submitted to the trial court for its consideration of summary judgment. We must now determine whether the trial court's granting of partial summary judgment in favor of the plaintiffs was correct as a matter of law.

Vicarious Liability of Southern Siding
The plaintiffs contend that, at the time of the accident, Mr. Fincke had recently departed from one of his employer's job sites and was operating his personal vehicle while under the control of his employer and in the furtherance of his employer's objective. Therefore, the plaintiffs argue Southern Siding, should be held vicariously liable for all damage caused by its employee, Eric Fincke, while acting in the course and scope of his employment.
Conversely, the defendant argues that Fincke was not acting in the course and scope of his employment because: 1) his conduct was not part of his job duties; 2) his conduct did not benefit the defendant-employer; and, 3) the accident occurred while Fincke was off-duty and away from the premises of the defendant's job site. Additionally, the defendant contends the accident occurred while Fincke was traveling on a personal errand prior to returning home from work. Accordingly, Fincke was not acting within the course and scope of his employment at the time of the accident. Thus, Southern Siding should not be held liable for Fincke's conduct. We disagree with the defendant's argument.
Louisiana Civil Code Article 2320 states that "[m]asters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed." Nevertheless, in applying art. 2320, an employer's liability for its employee's conduct extends only to such tortious conduct which is within the course and scope of employment. Orgeron v. McDonald, 93-1353 (La.7/5/94); 639 So.2d 224.
The issue of "[w]hether an employee is within the course and scope of his employment is a question that is only answerable by general rules, because of the unending contexts in which the question may arise." Id. at 226. Generally, "an employee's conduct is within the course and scope of his employment if the conduct is of the kind that he is employed to perform, occurs substantially within the authorized limits of time and space, and is activated at least in part by a purpose to serve the employer." Id. at 226-27. "An employer is [thereby] responsible for the negligent acts of its employee when the conduct is so closely connected in time, place, and causation to the employment duties of the employee that it constitutes a risk of harm attributable to the employer's business." Id. at 227; LeBrane v. Lewis, 292 So.2d 216 (La.1974).
In Reed v. House of Decor, Inc., 468 So.2d 1159 (La.1985), the Louisiana Supreme Court set forth several factors to consider when determining whether an employee's tortious conduct is employment-rooted. These factors include:
1) the payment of wages by the employer;
2) the employer's power of control;
3) the employee's duty to perform the particular act;
4) the time place and purpose of the act in relation to service of the employer;
5) the relationship between the employee's act and the employer's business;
6) the benefits received by the employer from the act;

*830 7) the motivation of the employee for performing the act; and
8) the reasonable expectation of the employer that the employee would perform the act.
Id. at 1161; see also Orgeron, 639 So.2d at 227.
In this suit, Mr. Fincke was involved in an accident while traveling from work to home. As a general principle, "an employee who is traveling from home to work or returning from work to home is generally not within the course and scope of his employment." Orgeron, 639 So.2d at 227. The rationale of this principle is that "an employee usually does not begin work until he reaches his employer's premises." Id. Therefore, unless the employee has a duty to perform a service or task en route, the employee's commute to and from work is usually considered outside the course and scope of employment. Orgeron, 639 So.2d 224.
However, exceptions to this principle may be invoked when the employee's commute to and from work involves traveling to different work locations, as opposed to a fixed work location. Id. For instance, "[w]hen an employee is required to check in at a certain place and is then dispatched to the work site for that day, he is generally in the course of employment in the travel between the check in place and the work site, but not between home and the check in place." Id. at 227. Conversely, "when an employee is instructed to report to different work sites which change periodically, without first reporting to a check in place, there are more variations in the determination of course and scope of employment." Id.
For example, in Orgeron, an offshore worker was involved in a two-vehicle accident while traveling from his employer's office to a specific dock for purposes of employment. While traveling home from a fourteen-day shift offshore, the worker had been intercepted by his employer and ordered to report to the dock within hours of the order. The worker had limited time to travel to the specified dock. The Louisiana Supreme Court held that the emergency nature of the assignment, which primarily benefitted the employer, greatly heightened the degree of employer control over the worker. The high degree of employer control and employer benefit in the special assignment brought the employee's trip to the assigned dock within the course and scope of his employment. Also, the court regarded the employee's travel from his employer's office to the assigned dock as an act performed in the furtherance of his employer's objective. Therefore, the court held the employer vicariously liable for the conduct of its employee.
Specifically, we find the factual circumstances of the present suit analogous to those found in Soileau v. D.J. Tire, Inc., 97-318 (La.App. 3 Cir. 10/8/97); 702 So.2d 818, writ denied, 97-2737 (La.1/16/98); 706 So.2d 979. In Soileau, this court held that the employee was acting in the course and scope of his employment when he was involved in an automobile accident while traveling to home from work. The employer provided its employee with a pager, and the employee was on call until 7:30 p.m. each business day. The employee was subject to being recalled to the employer's store to assist customers, beyond ordinary business hours. At the time of the accident, the employee was not responding to a customer's call. However, his pager remained activated, and he was effectively on call. Additionally, the employer paid one-half of the note on the employee's truck, which was used for business purposes, and issued a gasoline credit card to the employee. We reasoned that the employee was under his employer's control when the accident occurred. Therefore, the defendant-employer was deemed vicariously liable for the conduct of its employee.
Similarly, in Watson v. Ben, 459 So.2d 230 (La.App. 3 Cir.1984), an employee lost control of his vehicle, struck another vehicle and trapped the plaintiff between two parked vehicles. This court held that the employer was vicariously liable for the accident caused by its employee. The employee was traveling home from work, but remained on call for the remainder of the day. We determined that, although the employee did not carry a pager, he was still under the control of his employer at the time of the accident. The employee was on call twenty-four hours each *831 day for a six-day period at the time of the accident, his truck was used in his employer's business, and his salary included travel expenses.
Southern Siding contends that the controlling authority should be Bertrand v. Bollich, 97-164 (La.App. 3 Cir. 6/4/97); 695 So.2d 1384, writ denied, 97-1801 (La.10/13/97); 703 So.2d 621. In Bertrand, a nurse was involved in an automobile accident on her way home after delivering IV fluids to one of her home health patients. The delivery was made at the request of the nurse's director and was part of the nurse's job duties. This court held that the nurse was not acting in the course and scope of her employment, and her employer was not vicariously liable.
Relying on the Orgeron decision, we noted that even if the nurse had been ordered by her employer to immediately deliver the materials, special orders, alone, would not necessarily bring her delivery trip within the course and scope of her employment. This court considered the time constraints within which the orders were given, the work situation immediately before the orders were given, and the employee's ability to go home or anywhere else without immediately complying with the orders. Although the delivery benefitted the employer, the employer's control over the nurse ceased after the delivery was made. We reasoned that the nurse had completed her employer's errand and was on her way home at the time of the accident. At that point, the nurse's travel was not in the furtherance of her employer's objective. Thus, we held that the employer had no control over the nurse when the accident occurred.
The present suit is distinguishable from Bertrand because of the degree of employer control and the nonexistence of clearly-defined business hours. In Bertrand, the employee had completed the errand for her employer and was on her way home by the time of the accident. The employee worked within established business hours and typically ended her work day at 4:00 p.m. She was not on call beyond normal business hours. Although the trip was made for the benefit of her employer, the employee did not charge mileage for this trip, and the employer's control over the employee ceased upon completion of the delivery.
Comparable to the employees in Soileau and Watson, Mr. Fincke was often called upon to service the needs of his employer's customers beyond ordinary business hours. The record shows that Mr. Fincke was a salaried employee for Southern Siding. He served as the production manager of its Lafayette office at the time of the accident. Fincke worked both in the office and in the field visiting Southern Siding's job sites. His job duties included procurement of work crews for work projects, delivery of materials to job sites, and inspection of job sites. Southern Siding provided Fincke with a cellular phone and pager, a car allowance of $300.00 per month and a credit card to purchase gas for business travel. The primary purpose in providing Fincke with a pager and cellular phone was to establish a means of contacting him when Southern Siding's customers needed immediate attention to their concerns.
While Fincke was instructed to arrive at work no later than 8:00 a.m., he had no established work hours. The completion of his work day was contingent upon the length and nature of his job assignments at the defendant's various job sites, as well as the possibility of service calls from customers beyond normal business hours. The end of Mr. Fincke's work day could range from 12:00 noon to 7:00 p.m., on any given day. Fincke testified that his work responsibility on the day of the accident ceased when he departed from the job site, but that his employer could have subsequently paged or called him regarding customer problems, the status of a work crew or particular job site, or any employment-related matter. All such calls directed to his pager or cellular phone were employment-rooted. At the time of the accident, Fincke's pager and cellular phone were operational and active.
In his deposition, Mr. Fincke testified that prior to the accident, he had inspected and delivered materials to one of Southern Siding's job sites. Fincke stated that upon leaving the job site, he intended to visit Bryan Bourque, a friend and former college roommate, in Abbeville to discuss his future *832 career options. Fincke testified that, unless he had received a call from Southern Siding, he probably would have returned home after visiting with Bourque. Fincke's intent to visit his friend in Abbeville is purely speculative and lacks evidentiary support in the record. However, Fincke's mere mention of possibly receiving a call from the defendant, at any given time after leaving the job site, demonstrates that Fincke reasonably believed he was on call within a reasonable period beyond normal business hours.
Thus, in light of the Orgeron factors and our opinion in the Soileau case, we reason that the defendant, Southern Siding, had a heightened degree of control over Mr. Fincke at the time of the accident and that Mr. Fincke was acting within the course and scope of his employment when the accident occurred.
Further, the plaintiffs argue that Fincke's observation of the homes situated along Highway 699 was executed in the furtherance of his employer's objective. The plaintiffs contend that Fincke observed the homes with the intent of producing sales leads for Southern Siding's salesmen. Fincke testified that, as he approached the intersection of Highway 699 and Beau Road, his attention to the roadway was diverted by certain dilapidated houses along the right side of Highway 699. This sudden inattention caused Fincke to speed through a stop sign and into the intersection striking the plaintiffs' truck.
Even though Fincke was not a salesman, his job as production manager did not fully prohibit him from selling siding. He was permitted to sell siding on Saturday afternoons and Sundays. In his deposition, Fincke testified that he made only one attempt to sell siding. He also testified that he provided leads on potential customers to Southern Siding's salesmen on at least two occasions. At the scene of the accident, Fincke informed State Trooper Jeff Comeaux that he became distracted by looking at the homes and noticing that they needed some work. Fincke further testified that he was looking for other work crews in an effort to "check out" the status of his employer's business competitors.
Upon our review of the record, we find that Mr. Fincke was acting in the course and scope of his employment at the time of the accident and that he remained under the control of Southern Siding when the accident occurred. The trial court was correct in finding the defendant, Southern Siding, vicariously liable for conduct of its employee, Mr. Fincke. The judgment of the trial court is adequately supported by the evidence.

IV.

CONCLUSION
Based on the foregoing reasons, we affirm the decision of the trial court granting partial summary judgment in favor of the plaintiffs-appellees, Ted and Therese Landry, and denying the defendant-appellant's motion for summary judgment. All costs of this appeal are assessed against the defendant-appellant, Southern Siding.
AFFIRMED.
NOTES
[1] As amended by Acts 1997, No. 483, § 1.