772 So.2d 393 (2000)
MID BURNETT
v.
M & E FOOD MART, INC. # 2 and Randy Phillips.
No. 00-350.
Court of Appeal of Louisiana, Third Circuit.
November 15, 2000.
*394 Robert McCall, Erin Alley, Baggett, McCall, Burgess & Watson, Lake Charles, Louisiana, Counsel for Plaintiff/Appellee.
Christopher Ieyoub, Plauché, Smith & Nieset, Lake Charles, Louisiana, Counsel for Defendants/Appellants.
(Court composed of Judge BILLIE COLOMBARO WOODARD, Judge OSWALD A. DECUIR, and Judge JIMMIE C. PETERS.)
WOODARD, Judge.
Mr. Mid Burnett filed suit to recover for the personal injuries which he suffered as a result of a slip and fall accident at M & E Food Mart, Inc. # 2 (Market Basket). The trial court awarded him $50,000.00. The main issue, which Market Basket presents on appeal, is whether the trial court erred when it found that Mr. Burnett proved, by a preponderance of the evidence, that it failed to exercise reasonable care in fulfilling its duty to keep its premises in a reasonably safe condition. After reviewing the evidence, we find no error in the trial court's decision and affirm in part. We also reverse that portion of the judgment assessing fault to Market Basket's manager, Randy Phillips.

*395 * * * * * *
On a rainy December 15, 1996, at approximately 5:00 p.m., Mr. Burnett and his wife went grocery shopping at the Market Basket in DeQuincy, Louisiana. They parked approximately fifty feet from the store's entrance. Wearing his leather house shoes with rubber soles and with the help of a cane that a recent right foot surgery required, Mr. Burnett stepped out of his car, into the rain, and walked to the store's entrance.
He entered the store and stepped onto a "Welcome" mat, placed at all times on the, otherwise, tile floor. He turned to his right, still walking on mats, which the store had placed alongside the available grocery buggies' rows on rainy days. At least one row was located outside the matted area, alongside the store's front wall. When he attempted to get a buggy, he stepped out of the matted area and felt his left foot slip from under him. He fell, injuring his neck and left and right shoulders.
On September 15, 1996, he sued Market Basket and Mr. Randy Phillips, the acting store manager, for his injuries. In a bench trial held on November 4, 1999, the trial court found both to be liable, awarded Mr. Burnett $50,000.00, and assessed eighty-five percent fault to Market Basket and Mr. Phillips, and fifteen percent to Mr. Burnett. Market Basket and Mr. Phillips appeal.

* * * * *

MR. RANDY PHILLIPS' LIABILITY
At the outset, we reverse the trial court's finding that Mr. Phillips is liable. He was not working on the day of the accident. Furthermore, the record reflects that he required that his employees, at all times, follow elaborate clean-up procedures. After thoroughly reviewing the record, we do not find a shred of evidence which could point to his potential civil liability. In fact, the trial court's oral reasons for judgment do not state any reasons or facts pertaining to his alleged negligence.
Moreover, assuming that Mr. Phillips acted negligently, the law would impute his fault to his employer. Indeed, La.Civ.Code art. 2320 provides that "[M]asters and employers are answerable for the damage occasioned by their servants and overseers," acting in the course and scope of their employment. Employees' conduct is within the course and scope of their employment when the incriminating conduct relates to that which they are employed to perform.[1] Such employer's vicarious liability is triggered when the employee's tortious conduct is so closely related in time, place, and causation to the employee's employment duties that it constitutes a risk of harm attributable to the employer's business.[2] In the instant case, Mr. Burnett did not present any evidence which would allow us to infer negligent actions extraneous to Mr. Phillips' job duties.
Accordingly, we find error in the trial court's judgment, assessing liability to Mr. Phillips and reverse.

MARKET BASKET
The law applicable to litigation involving a slip and fall in a store is stated in La.R.S. 9:2800.6. It provides, among other requirements, that the claimant has the burden of proving that:
(1) The accident occurred as a result of a condition which presented an unreasonable risk of harm, and that the risk of harm was reasonably foreseeable;
(2) The merchant either created or had actual or constructive notice of the condition which caused the damage prior to the occurrence;
(3) The merchant failed to exercise reasonable care. The statute now specifies that "[i]n determining reasonable *396 care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care."[3]
A condition is hazardous when it presents an unreasonable risk of harm to customers under the circumstances.[4] In a slip and fall case, a hazard is established when the fall results from a foreign substance on a floor or an unreasonably slippery condition.[5] In the case sub judice, the record clearly reflects that the condition presented an unreasonable, and a reasonably foreseeable, risk of harm. Namely, the accident report, which Market Basket filed, states that "[t]he area between the mats and the buggies were [sic] wet from the buggies dripping." Furthermore, evidence shows that Market Basket, more probably than not, created the hazard by having its employees bring the shopping carts into its store, dripping wet, and leaving them to "drip dry" in the area where Mr. Burnett fell, an area where customers would go to retrieve a basket. Market Basket also had actual knowledge that while "drip drying," water would leak from the carts and settle onto the tile floor, which would create a very slippery condition.
Accordingly, Mr. Burnett established the second of the statutory requirement's prongs.

Reasonable Care
The only issue, upon which we see fit to elaborate, is whether Market Basket failed to exercise reasonable care in fulfilling its duty to keep its premises in a reasonably safe condition.[6] The statute specifies that "[t]his duty includes a reasonable effort to keep the premises free of any hazardous conditions which might reasonably give rise to damage."[7] Although a store owner has an affirmative duty to keep its premises in a safe condition, he is not the insurer of his patrons' safety,[8] nor is he liable every time an accident occurs.[9] We must determine whether a store owner adequately discharged its duty of care in light of the specific circumstances present in each case.[10]
In the case sub judice, the record reveals that the tile floor, where Mr. Burnett slipped and fell, was wet from the dripping buggies. Namely, Mr. Brian Guillory, then a Market Basket assistant manager and acting manager on the day of the accident, testified that Market Basket usually had problems with water dripping from buggies in that area. He stated that "[t]here's been water on the floor before." He recalls that the tile floor, onto which Mr. Burnett fell, was wet immediately after the accident. Mr. Randy Phillips, the store manager, testified that on rainy days, he implemented a procedure, directing the "bag boys" to keep a mop and a bucket near the buggies and to remove the eventual excess water. He also instructed his employees to keep a yellow "Wet Floor" sign near the shopping carts.

Mop and Bucket
Mr. Phillips testified that on rainy days, the "bag boys" had to keep a mop and a bucket near the buggies and remove the excess water generated by the incoming wet shopping carts. However, Mr. Guillory testified that they "sometimes" placed a mop and the bucket near the buggies, implying that the procedure was not automatic.
Mr. Touchstone, a bagger at Market Basket at the time of the accident, testified *397 that he remembers cleaning the area at least ten minutes before the accident. Nevertheless, the Daily Floor Maintenance Log, in which the employees had to check "SWEEP" and/or "MOP" at various hours of the day, did not reflect any entries under the mop column. Furthermore, Mr. Guillory does not recall seeing a wet mop and a bucket near the buggies on the day of the accident. Presented with such evidence, the trial court concluded that the "bag boy" did not mop the floor but probably swept it. In any event, Mr. Guillory testified that the floor was wet when he assisted Mr. Burnett after his fall.

Wet Floor Signs
Mr. Phillips testified that on rainy days, he implemented a procedure, requiring his employees to place yellow "Wet Floor" signs in and outside of the store. More specifically, one sign had to be placed outside the store by the automated entrance door, and three others had to be positioned inside the store. The morning following the accident, Mr. Guillory took pictures of the area where Mr. Burnett fell. Examining the resulting photographs, Mr. Phillips indicated that, of the three indoor "Wet Floor" warning signs, one should have been placed between the store's automated entrance and exit doors and another on each side of the mats. This would include the area where Mr. Burnett fell. However, he admitted that, having been absent on the day of the accident, he had no personal knowledge whether the signs had actually been placed as designed. In fact, he conceded that he did not know whether his instructions were always respected when he was not working.
Neither Mr. Burnett, nor his wife, Ms. Beulah Burnett, recalled seeing any "Wet Floor" sign near the area where Mr. Burnett fell. Mr. Touchstone remembers having placed, at least, three "Wet Floor" signs near the entrance door. However, he could not recall, specifically, placing one by the buggies. Moreover, Mr. Guillory could not remember whether a cone had been placed by the buggies before Mr. Burnett's fall. Additionally, we note that the incident report detailed the placement of the signs but did not mention one in the area where Mr. Burnett fell. When asked to describe the safety measures, which the store implemented on rainy days, Mr. Guillory stated that he had to make sure that the "Wet Floor" signs were properly placed and explained:
I always make sure there is one on the entrance on the outside of the lot and whenever you first come in. I usually put one down towards the produce area. Sometimes we'll put a weta mop up there and a mop bucket, which I don't recall if I had or not; I'm not sure.
(Emphasis added.)
In sum, the evidence reflects that the tile floor, located underneath the buggies, would unavoidably become wet and/or damp from rain water. Employees acknowledged the potential hazard on rainy days, and their solution was to constantly mop and put a "Wet Floor" sign in the buggy area, as well as to bring inside the buggies, dripping wet, and place them in their storage area to "drip dry," permitting customers to take them from that location. This was the procedure which they were supposed to follow and the log does not reflect it. Nevertheless, Mr. Touchstone does recall cleaning the floor at least ten minutes before the fall. However, the photo reflecting the accident site does not show that a mop and bucket were in that area, as it was supposed to be. Additionally, the Burnetts testified that there was no "Wet Floor" sign where Mr. Burnett fell, and no Market Basket employee recalls either seeing or placing a sign near the special hazard, which the store created through their "drip drying" procedure. Furthermore, the evidence reflects that the floor was, at least, damp at the time of the accident. In fact, Mr. Burnett testified that an employee told him, after he fell, that he had slipped in a puddle of water.
After it heard the evidence presented during trial, the trial court found that *398 Market Basket did not discharge its duty of care towards Mr. Burnett. We do not find error in this decision. Accordingly, we affirm.

CONCLUSION
We reverse the trial court's decision which found Mr. Phillips liable for Mr. Burnett's injuries. However, the record supports its decision to hold Market Basket liable for Mr. Burnett's injuries, which he sustained in his slip and fall. Accordingly, we affirm.
AFFIRMED IN PART; REVERSED IN PART.
NOTES
[1] Landry v. Fincke, 98-90 (La.App. 3 Cir. 5/20/98); 714 So.2d 826.
[2] Id.
[3] La.R.S. 9:2800.6(B)(3).
[4] Ward v. ITT Specialty Risk Servs., Inc., 31,990 (La.App. 2 Cir. 6/16/99); 739 So.2d 251.
[5] Id.
[6] La.R.S. 9:2800.6(A).
[7] Id.
[8] Ward, 739 So.2d 251.
[9] Id.
[10] Id.